IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **OWEN GOWANS, III,** <br>      **Plaintiff,** <br><br> v. <br><br> **SEPTA,** <br>      **Defendant.** | **CIVIL ACTION** <br><br><br><br> **NO. 22-2894** |

<u>MEMORANDUM</u>

**HODGE, J.**                               **August 13, 2024**

  Owen Gowans, III ("Plaintiff") filed a complaint against his employer, Southeastern Pennsylvania Transportation Authority ("SEPTA" or "Defendant"), asserting claims of race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"), and age discrimination under the Age Discrimination in Employment Act ("ADEA") and the PHRA. (*See generally* ECF No. 1.)

  Before the Court is Defendant's Motion for Summary Judgment. (ECF No. 19.) Plaintiff opposes the Motion. (ECF No. 20.) For the reasons set forth below, the Court grants Defendant's Motion.

**I.  BACKGROUND**[1]

  Plaintiff is an African American male and was sixty years old at the time of the employment decision at issue in this matter. (ECF No. 20-1 at 16 ¶ 55; ECF No. 20-8 at 1.) In August 1993, Plaintiff was hired by SEPTA as a Bus Operator. (ECF No. 19-2 at 6 ¶ 6; ECF No. 19-3 at 224.) Plaintiff was promoted in October 1998 to the position of Instructor/CDL Third Party Examiner and then again in December 2009 to Chief Instructor. (ECF No. 19-2 at 6 ¶ 7; ECF No. 19-3 at

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

145–47.) Before July 2021, Plaintiff had applied multiple times to the position of Manager, Surface Training at SEPTA but had been denied the position. (ECF No. 19-2 at 7 ¶¶ 9, 15; ECF No. 19-3 at 29, 148–51.)

The application for promotion at issue in this case is for the Manager of Training position; the position was posted in July 2021 and interviews occurred in August 2021. (ECF No. 19-2 at 11 ¶¶ 40, 60; ECF No. 19-3 at 27; ECF No. 19-5 at 29–103.) Plaintiff interviewed for the position, along with two other candidates, Dennis Hager (40-year-old white male) and Kevin Troy (50-plus-year old white male). (ECF No. 19-2 at 13 ¶ 60; ECF No. 19-5 at 29–103.) The three candidates were interviewed by a panel selected by Colleen May, the hiring manager. (ECF No. 19-2 at 13 ¶ 57; ECF No. 19-3 at 45.) May is a 56-year-old white female. (ECF No. 19-2 at 7 ¶ 12.) The other two panelists were John Wojciechowski (50+ year-old white male) and Michael Dawkins (50+ year-old black male). (ECF No. 19-2 at 13 ¶ 58; ECF No. 19-3 at 192–93.) Plaintiff was denied the position, which was instead awarded to Dennis Hager. (ECF No. 19-2 at 14 ¶ 66; ECF No. 19-5 at 112.)

Colleen May had prior experience working with Plaintiff. (ECF No. 19-2 at 8 ¶ 24; ECF No. 19-3 at 80–83.) In 2019, she was awarded a promotion over Plaintiff to the Manager of Training position and, thereafter, she became Plaintiff's supervisor. (ECF No. 19-2 at 7 ¶¶ 15, 24; ECF No. 19-3 at 29, 50.) After May was awarded the position, a group email was sent out congratulating May. (ECF No. 19-2 at 8 ¶ 19; ECF No. 19-4 at 101.) Plaintiff responded to the group asking everyone to congratulate May individually and not in the group email. (ECF No. 19-2 at 8 ¶ 20; ECF No. 19-4 at 101; ECF No. 20-1 at 8.) May testified that she believed Plaintiff did not like her because she had been awarded the Manager of Training position over him in 2019 but

does not state the email, or other observations, is the reason for that belief. (ECF No. 19-2 at 11 ¶ 39; ECF No. 19-3 at 46–47.)

The vacancy in the Manager of Training position at issue in this matter arose following Colleen May's promotion to Director of Training in July 2021. (ECF No. 19-2 at 11 ¶ 40; ECF No. 19-3 at 26–28.) Before posting the position, May met with Human Resources to change the job title to include welding and apprenticeships. (ECF No. 19-2 at 11 ¶ 42; ECF No. 19-3 at 40–41.) In the 2019 job posting for the Manager, Surface Training position, there was a requirement of "three years of second level manager experience." (ECF No. 19-2 at 12 ¶ 46; ECF No. 19-4 at 116.) For the 2021 job posting, May removed this three-year requirement of supervisory experience. (ECF No. 19-2 at 12 ¶ 47; ECF No. 19-4 at 110–12.) May testified that Human Resources suggested the requirement be removed to open the job up to more candidates. (ECF No. 19-2 ¶ 48; ECF No. 19-3 at 48–49.) In his Declaration, Plaintiff alleges that May deliberately lowered the qualifications for the position from prior years so that Hager could meet them. (ECF No. 20-3 at 3 ¶ 20.)

At the time of the job posting, Plaintiff states that he had work experience as Third Party CDL Examiner and CSTMIS administrator that spanned fifteen years, whereas Hager had only two years of experience in those positions. (ECF No. 20-2 at 5 ¶ 23; ECF No. 20-3 at 2–3.) In Plaintiff's Concise Statement of Disputed Material Facts, he cites to his own Declaration to support his contention that "it was clear that Hager" "did not have three years of second level supervision experience" at the time of the 2021 job positing and, thus, the change in requirements by May was done to "make it possible for Hager to meet the minimum qualification for the position." (ECF

3

No. 20-2 at 7 ¶ 33; ECF No. 20-3 at 3.) In addition, Plaintiff's job duty of managing the slate[2] had recently been reassigned to other Chief Instructors, including Hager. (ECF No. 19-2 at 10 ¶ 33; ECF No. 19-3 at 172–79.) May testified that she made this reassignment after reporting to her supervisor that Plaintiff felt the slate was overwhelming for him. (ECF No. 19-2 at 9 ¶ 32; ECF No. 19-3 at 89–91.) Plaintiff asserts that Hager was reassigned to the slate so that Hager would have experience in the field. (ECF No. 20-2 at 5 ¶ 25; ECF No. 20-3 at 3.)

On July 29, 2021, after the job was posted, May sent an email to the entire Training Department asking employees, including Plaintiff, to report any forthcoming retirements. (ECF No. 19-2 at 21 ¶ 108; ECF No. 19-5 at 155.) According to Plaintiff, May only sent these retirement emails out when the position for Manager, Surface Training was vacant (July 2021 and February 2022), and she was seeking applicants. (ECF No. 20-1 at 32 ¶ 110.)

After the application was posted, four candidates were offered interviews and three accepted: Plaintiff, Dennis Hager (40-year-old white male), and Kevin Troy (50+ year-old white male). (ECF No. 19-2 at 13 ¶ 55; ECF No. 19-3 at 101–03.) May then selected and Human Resources approved the two other panelists to conduct the interviews: John Wojciechowski (50+ year-old white male) and Michael Dawkins (50+ year-old black male). (ECF No. 19-2 at 13 ¶¶ 57–58; ECF No. 19-3 at 45, 192.) In August 2021, all three candidates were interviewed with the same seven questions. (ECF No. 19-2 at 13 ¶¶ 60–61; ECF No. 19-5 at 29–103.) After the panelists reported each of their scores in SEPTA's Success Factors software, the composite scores placed Hager as the best candidate with 4.76 out of 5, compared with 4.14 for Troy and 3.33 for Plaintiff. (ECF No. 19-2 at 14 ¶¶ 64–65; ECF No. 19-3 at 98–100, 127–32; ECF No. 19-5 at 17–20, 104–

---

[2] The slate is a schedule for Instructors and Chief Instructors. (ECF No. 19-2 at 9 ¶ 27; ECF No. 19-3 at 36.)

10.) Based on these scores, Hager was offered the position. (ECF No. 19-2 at 14 ¶ 66; ECF No. 19-5 at 112.) This process was consistent with SEPTA's Employment Hire, Promotion and Transfer Procedures Manual, which states that the "highest-ranked candidate(s) . . . will be selected to fill the position(s)." (ECF No. 19-2 at 6 ¶ 4(o); ECF No. 19-3 at 20.)

During the interview for the 2021 Manager of Training position, Plaintiff contends that May could have influenced the interview scores of the two other interviewers, Wojciechowski and Dawkins. (ECF No. 20-1 at 18–19 ¶¶ 64, 66; ECF No. 20-3 at 7 ¶ 33.) Two interviewers testified that the panel members did not discuss the candidate performances, whereas one interviewer, Wojciechowski, testified that they sometimes did discuss a candidate's interview once the candidate exited the room. (ECF No. 20-1 at 18 ¶ 63; ECF No. 19-3 at 98; ECF No. 19-5 at 19; ECF No. 20-3 at 34.)

SEPTA's Promotion and Hiring Manual also requires interviewers to recuse themselves when there may be "the appearance of potential favoritism, preferential or biased treatment." (ECF No. 19-2 at 18 ¶ 86; ECF No. 19-3 at 20.) Plaintiff believes that May had favoritism toward Dennis Hager because of May's participation in a fantasy football league with Hager and Hager's use of a nickname ("BP") for May, which originated during the football league. (ECF No. 19-2 at 18 ¶ 90; ECF No. 19-3 at 218–22; ECF No. 19-5 at 118–24, 125–30, 136–37, 139.) May testified that she has known Hager for eight years and Plaintiff for over twenty years. (ECF No. 19-2 at 18 ¶¶ 87, 89; ECF No. 19-3 at 30, 33.)  She further testified that pursuant to SEPTA policy, she was not required to recuse herself based on her membership in the fantasy football league with Hager. (ECF No. 19-2 at 19 ¶ 91; ECF No. 19-3 at 45–47.)

Two interview panelists, Dawkins and May, both testified that Plaintiff's qualifications for the 2021 job position were lacking, including the fact that his interview answers were deficient.

5

(ECF No. 19-2 at 15 ¶ 68; ECF No. 19-5 at 11–16, 21–23; ECF No. 19-3 at 104–05.) Plaintiff did not demonstrate knowledge in certain areas required by the position, including maintenance, welding, and apprenticeships. (ECF No. 19-2 at 15 ¶ 68; ECF No. 19-3 at 104–05; ECF No. 19-5 at 11–16, 21–23.) Further, in May's performance review of Plaintiff for 2021, she commented on Plaintiff's management of the slate, which appeared to be "overwhelming" and "tedious" for him. (ECF No. 19-2 at 9 ¶ 29; ECF No. 19-3 at 85–89.) From 2019-2021, Plaintiff spent up to 85% of his time managing the slate. (ECF No. 19-2 at 9 ¶ 28; ECF No. 19-3 at 168–72.) Plaintiff does not dispute that he spent up to 85% of his time managing the slate, but he denies that he was ever "overwhelmed" by the slate. (ECF No. 20-1 at 9–10 ¶ 29; ECF No. 19-3 at 169–78.) Instead, Plaintiff states that he could not meet May's request of doing the slate one year in advance because of the moving parts that could require the slate to be adjusted each day (ECF No. 20-1 at 10 ¶ 29; ECF No. 19-3 at 171.) May testified that after reporting her concerns to her supervisor, she transferred the slate to Tim Roberson and then later to Dennis Hager. (ECF No. 19-2 at 10 ¶ 33; ECF No. 19-3 at 172–79.) The 2021 job position at issue included job responsibilities that were similar to that of the slate, including the coordination of schedules for various employees. (ECF No. 19-4 at 111.)

In addition, May testified that she received allegations of harassment, bullying, and inappropriate emails from multiple employees about Plaintiff. (ECF No. 19-2 at 10 ¶¶ 34–35; ECF No. 19-3 at 74–76, 223–39; ECF No. 19-4 at 103–08.) Plaintiff denies that he engaged in this conduct. (ECF No. 20-1 at 11 ¶ 34; ECF No. 20-3 at 4–5 ¶ 24.) These complaints led to a written warning issued to Plaintiff on November 3, 2020, which was approved by EEO. (ECF No. 19-2 at 10 ¶ 37; ECF No. 19-3 at 237–38.) Plaintiff later appealed this warning, and it was ultimately

overturned by May's Director, Tracy Innaurato, in December 2020. (ECF No. 19-2 at 10 ¶ 38; ECF No. 19-3 at 77–79, 239.)

Plaintiff initiated this case by filing a Complaint before the United States District Court for the Eastern District of Pennsylvania on July 7, 2022. (ECF No. 1.) Thereafter, on October 31, 2022, Defendant filed an Answer. (ECF No. 4.) The case was then transferred from Judge Karen S. Marston to Judge Kelley B. Hodge on February 2, 2023. (ECF No. 14.) SEPTA filed a Motion for Summary Judgement on April 26, 2023, to which Plaintiff submitted a Response in Opposition on May 17, 2023. (ECF No. 19; ECF No. 20.) Defendant then submitted a Reply in Further Support of Its Motion for Summary Judgment on June 7, 2023. (ECF No. 23.)

Defendant moves for summary judgment on Plaintiff's claims under Title VII, the ADEA, and the PHRA, arguing that (1) Plaintiff does not establish a prima facie case to support his claims; (2) Plaintiff does not contradict Defendant's legitimate, non-discriminatory reasons for not promoting Plaintiff; and (3) Plaintiff has not raised a genuine dispute as to any material fact. (*See generally* ECF No. 19.) Plaintiff opposes the motion. (ECF No. 20.)

## II.   LEGAL STANDARD

A motion for summary judgment must be denied unless the moving party is able to show "no genuine dispute as to any material fact" and that the "movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility" of identifying the portions of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute is defined as one in which a jury could reasonably find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248 (1986). In assessing materiality, "only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

When the defendant moves for summary judgment, "the initial burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements to her case." *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). The summary judgment standard requires the court to view the evidence in the light most favorable to the non-moving party, including all justifiable inferences. *Anderson,* 447 U.S. at 255. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 248. If the court finds that any factual issues exist that could be reasonably resolved for either party, and thus requires the presence of a fact finder, then summary judgment must be denied. *Id.* at 250.

## III.    DISCUSSION

Defendant moves for summary judgment in its favor under Title VII, the ADEA, and the PHRA, arguing that "Plaintiff has not produced any evidence that SEPTA decided not to promote him based on his age or race." (ECF No. 19 at 21.) Specifically, Defendant argues that "Plaintiff simply cannot make out an age or race discrimination claim where the evidence shows that all three interview panelists separately and independently scored the candidates, scored and ranked the candidates similarly based on their responses to the same series of questions asked of each candidate, and where the promotion decision was based on the consensus ranking from the interview process." (*Id.* at 22.) The Court addresses each of Plaintiff's claims below.

A.     **Title VII Claim**

Under Title VII, employers cannot discriminate against their employees on the basis of race. 42 U.S.C. § 2000e-2(a)(1). In cases in which a plaintiff relies on circumstantial evidence,[3] courts consider the plaintiff's claims under the *McDonnell Douglas* framework, following a three-step analysis. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff must establish a prima facie case of discrimination. *Id.* In certain cases, the Third Circuit has held that it is sufficient for a plaintiff to demonstrate that they were replaced by someone outside of their protected class to establish an inference of discrimination at the prima facie stage. *See Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 242 (3d. Cir. 2007). Second, if the plaintiff meets their burden, the defendant then must articulate a legitimate, nondiscriminatory reason for rejecting the employee. *See McDonnell Douglas Corp.*, 411 U.S. at 792. This is a burden of production, rather than persuasion, meaning that an articulation of lawful reasons for the action suffices to meet the defendant's burden. *See Tex. Dep't of Cmty. v. Burdine*, 450 U.S. 248, 257 (1981). Third, if the defendant fulfills its burden, the plaintiff then must prove by a preponderance of the evidence that the defendant's reasons were pretextual. *See McDonnell Douglas Corp.*, 411 U.S. at 792.   Here, "a plaintiff may defeat a motion for summary judgment by either discrediting the defendant's proffered reasons or adducing evidence that discrimination was 'more likely than not a . . . determinative cause of the adverse employment action.'" *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 271 (3d Cir. 2010) (citing *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994)).

---

[3] Plaintiff only argues a mixed-motive theory pursuant to evidence of age-related activities, but not in relation to his racial discrimination claims. Given the lack of direct evidence of racial discrimination, it is not appropriate to employ the mixed-motive analysis under *Price Waterhouse v. Hopkins* to the racial discrimination claim in this case. 490 U.S. 228, 247 (1989).

Plaintiff meets his burden of establishing a prima facie case of race discrimination under step one of the *McDonnell Douglas* analysis. A plaintiff pursuing a Title VII claim must establish his prima facie case of race discrimination by showing "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the circumstances of the adverse employment action give rise to an inference of discrimination." *Johnson,* 214 F. App'x at 241. Here, Plaintiff meets the burden of establishing the first three elements of his prima facie case because (1) he is an African-American man, (2) he had the requisite qualifications to apply for the position of Manager of Training in 2021, and (3) he was rejected for the position. In determining whether Plaintiff meets the fourth element, courts have routinely found that replacement by someone outside the protected class can meet the standard for an inference of discrimination. *See, e.g.*, *Johnson,* 214 F. App'x at 242 (holding that the plaintiff's replacement by a white woman met the fourth element of the prima facie case); *Wright v. Murray Guard, Inc.,* 455 F.3d 702, 707 (6th Cir. 2006) (holding that the fourth element of the plaintiff's prima facie case is met by demonstrating replacement by someone outside the protected class). Under this standard, Plaintiff is able to meet the fourth element and establish his prima facie case because he was rejected for a position that was instead awarded to a white male. (ECF No. 19-2 at 14 ¶ 66; ECF No. 19-5 at 112.)

After a plaintiff establishes their prima facie case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for rejecting the employee. *See McDonnell Douglas Corp.*, 411 U.S. at 792. Here, Defendant provides numerous legitimate reasons for why Hager was chosen for the Manager of Training position. First, Plaintiff received the lowest interview score of the three candidates after interviewing with a diverse panel, (ECF No. 19-2 at 14 ¶¶ 64–65; ECF No. 19-3 at 98–100, 127–32; ECF No. 19-5 at 17–20, 104–10.), and per SEPTA

company policy, the "highest-ranked candidate(s) . . . will be selected to fill the position(s)." (ECF No. 19-2 at 6 ¶ 4(o); ECF No. 19-3 at 20.) Second, Plaintiff's interviewers testified that his interview answers were deficient, including the fact that Plaintiff admitted that he lacked knowledge in certain areas that were integral to the job position. (ECF No. 19-2 at 15 ¶ 68; ECF No. 19-5 at 11–16, 21–23; ECF No. 19-3 at 104–05.) Plaintiff was also already struggling to keep up with his current job position, evidenced by the fact that he could not meet his supervisor's expectations regarding the management of the slate, resulting in the responsibility being reassigned to another employee. (ECF No. 19-2 at 9 ¶ 29; ECF No. 19-3 at 85–89.) Third, and finally, May testified that she received multiple allegations of improper workplace behavior about Plaintiff, including instances of bullying and harassment. (ECF No. 19-2 at 10 ¶¶ 34-35; ECF No. 19-3 at 74-76, 223-39; ECF No. 19-4 at 103-08.) Any of these facts meet Defendant's burden of producing a legitimate, nondiscriminatory reason for rejecting Plaintiff.

After Defendant provides nondiscriminatory reasons for the adverse employment action, the burden shifts back to Plaintiff to prove that Defendant's reasons for rejecting Plaintiff were merely pretext. *See McDonnell Douglas Corp.*, 411 U.S. at 792. Here, Plaintiff is unable to meet his burden. At the summary judgment stage, Plaintiff can meet his burden by "discrediting the defendant's proffered reasons" or "adducing evidence that discrimination was 'more likely than not a . . . determinative cause'" of the rejection. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 277 (3d Cir. 2010) (citing *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994)). Plaintiff attempts to discredit Defendant's proffered reasons by arguing that Colleen May was biased towards Hager. (ECF No. 19-2 at 18 ¶ 90; ECF No. 19-3 at 218-222; ECF No. 19-5 at 118-24, 125-30, 136-37, 139.) Plaintiff relies on the fact that May was in a fantasy football league with Hager and that Hager referred to her by a nickname to illustrate her favoritism. (*Id.*) These

contentions do not establish genuine issues of material fact regarding whether Defendant's legitimate non-discriminatory reasons were pretextual. The friendliness between May and Hager alone does not support the inference purported by Plaintiff regarding May's ability to influence the other interview panelists' scores. As the Third Circuit noted in *Parks v. Rumsfeld*, "friendship or cronyism is not a basis for relief under the ADEA or Title VII." 119 F. App'x 382, 385 (3d Cir. 2005).

Plaintiff implores the Court to apply a "cat's paw" theory of liability because May could have influenced the panel, *see Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011), especially considering the disputed fact of whether the panelists discussed the candidates' performances. Two interviewers testified that the panel members did not discuss the candidates' performances, whereas one interviewer, Wojciechowski, testified that they sometimes did discuss a candidate's interview once the candidate exited the room. (ECF No. 20-1 at 18 ¶ 63; ECF No. 19-3 at 98; ECF No. 19-5 at 19; ECF No. 20-3 at 34.) However, this factual question does not rise to the level of a genuine dispute of material fact to warrant denying Defendant's Motion. First, Plaintiff fails to produce any evidence to suggest that May harbored "discriminatory animus" towards him as is required for a "cat's paw" theory of liability. *Staub*, 562 U.S. at 417. In contrast, Defendant presents evidence, in the form of May's deposition, that May did not feel any animosity towards Plaintiff and May believed that it was Plaintiff who did not like her because she received the Manager of Training promotion in 2019. (*See* ECF No. 19-2 at 8 ¶ 20, 11 ¶ 39; ECF No. 19-3 at 46–47; ECF No. 19-4 at 101; ECF No. 20-1 at 8.) Second, Plaintiff raises doubt concerning whether the panelists discussed candidate performances.  However, Defendant presents evidence from two of three witnesses that comprised the panel that there was no discussion about a candidate following that candidate exiting the interview room.  Further, Plaintiff does not provide evidence

of it happening in this instance regarding him. As such, Plaintiff fails to establish that there was "blind reliance" on May's influence, which also precludes the Court from applying a "cat's paw" theory. *Id.* at 416. Third, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 447 U.S. at 248.

Moreover, Plaintiff provides no factual disputes regarding Defendant's proffered reasons for rejecting Plaintiff, such as his underperformance in his interview or his lack of knowledge of the position at issue. In response to Defendant's contention that Plaintiff was overwhelmed with managing the slate, Plaintiff denies that he was overwhelmed and states that he could not comply with May's requests regarding managing the schedule a "year ahead of time" because "it could not be done because of the moving parts that could require adjustments of the slate daily." (ECF No. 20-1 at 10.) Although Plaintiff offers other reasons for his underperformance in the slate, he does not contest that he was spending up to 85% of his time working on it and was unable to meet May's requests regarding the project timeline. (ECF No. 20-1 at 9–10; ECF No. 19-3 at 169–78.) Plaintiff fails to meet his burden of demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence[.]'" *Fuentes*, 32 F.3d at 765. Thus, the Motion for Summary Judgment regarding the Title VII claim of race discrimination is granted.

    **B.    ADEA Claim**

Under the ADEA, it is unlawful for an employer to discriminate or discharge an employee due to the individual's age. 29 U.S.C. § 623(a)(1). When there is no direct evidence of discrimination, a plaintiff can utilize circumstantial evidence under the *McDonnell Douglas*

burden-shifting framework. *See McDonnell Douglas Corp.*, 411 U.S. at 802. The *McDonnell Douglas* framework requires a plaintiff to first establish a prima facie case of age discrimination. *See Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). Plaintiff is able to meet his prima facie case for age discrimination under the *McDonnell Douglas* framework because he (1) is over forty, (2) was rejected from a job promotion, (3) met the qualifications for the position, and (4) was "replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." *Id.* After Plaintiff establishes his prima facie case, Defendant must provide "legitimate non-discriminatory [justification] for the adverse employment action." *Smith v. City of Allentown*, 589 F.3d 684, 690 (3d Cir. 2009). As stated above in the analysis of Plaintiff's Title VII claim, *see supra* Section III.A at 10–11, Defendant meets its burden. (ECF No. 19-2 at 14 ¶¶ 64–65; ECF No. 19-3 at 98–100, 127–32; ECF No. 19-5 at 17–20, 104–10.)

After Defendant has established its legitimate, non-discriminatory reasons for not promoting Plaintiff, the burden shifts back to Plaintiff to demonstrate that the reasons provided were merely pretext for the prohibited discrimination. *See McDonnell Douglas Corp,* 411 U.S. at 804. At this stage, Plaintiff must provide evidence that "a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *See Fuentes,* 32 F.3d. at 764. Here, Plaintiff cannot meet his burden.

Aside from an email sent by May to the entire department asking about forthcoming retirement plans to prepare for job transitions, Plaintiff offers no evidence of age explicitly arising in the application process for the Manager of Training position. (ECF No. 19-2 at 21 ¶ 108; ECF No. 19-5 at 155.) The case cited by Plaintiff to support his argument that May's email to the department is circumstantial evidence that could influence a jury is inapposite here. (*See* ECF No.

20 at 9–11 (citing *Rysak v. Ferro Corp.*, 671 F. Supp. 3d 543 (E.D. Pa. 2023)).) In *Rysak v. Ferro Corp.*, the plaintiff's position was terminated and consolidated into a new role that was awarded to another employee who was 20 years younger than her. 671 F. Supp. 3d at 547. In *Rysak*; the plaintiff's termination did not involve an interview process; the company previously offered a voluntary early retirement program ("VERP") to the plaintiff, which she declined; and at least three other employees who declined the VERP also had their positions terminated. *Id.* In denying the defendant's motion for summary judgment, the *Rysak* Court relied upon the totality of these facts, not just the offering of a VERP. *Id.* at 551. In fact, the *Rysak* Court specifically reasoned that "'the mere offer [of a VERP] without more does not support a claim of age discrimination,'" and it would require "other evidence" to show that the defendant "intended to wean its older employees from the work force in favor of younger ones." *Id.* at 550 (quoting *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1088 (3d Cir. 1992)). Here, Plaintiff seeks for the Court to determine that May's email is similar to offering a VERP, and that May's email is evidence that a reasonable jury could rely on to determine that May had a discriminatory motive and intent. (*See* ECF No. 20 at 9–11.) However, Plaintiff does not present any other evidence with the email that altogether creates a genuine issue of whether there was a causal connection between May's email and Plaintiff not being selected for the promotion and, further, that the decision was based on Plaintiff's age.

Additionally, Plaintiff argues that May's removal of the three-year qualification requirement from the 2021 job position is evidence of her desire to promote Hager. (ECF No. 20-2 at 7 ¶ 33; ECF No. 20-3 at 3.) However, May testified that the change in requirement came out of a meeting with Human Resources and that Human Resources had to approve the description change. (ECF No. 19-2 at 12 ¶ 48; ECF No. 19-3 at 48–49.) Even if May did change the requirements to expand the applicant pool to include Hager, this does not disprove Defendant's

15

proffered reasons for rejecting Plaintiff. May was only one member of a three-person panel who interviewed Plaintiff. (ECF No. 19-2 at 13 ¶¶ 57–58; ECF No. 19-3 at 45, 192.) Each interviewer scored Plaintiff the lowest compared to the other applicants. (ECF No. 19-2 at 14 ¶¶ 64–65; ECF No. 19-3 at 98–100, 127–32; ECF No. 19-5 at 17–20, 104–10.)

In *Thompson v. Bridgeton Bd. of Education*, the Third Circuit rejected the appellant's claims about the interview process being a pretext for discrimination, noting that under the *McDonnell Douglas* test, the Court does not "second guess the method an employer uses to evaluate its employees." 613 Fed. App'x 105 at 108 (3d Cir. 2015) (citing *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005)). In *Thompson*, the Third Circuit also found that "poor interview performance is a legitimate non-discriminatory reason for refusal to hire." *Id.* Here, Dawkins testified that Plaintiff underperformed during the interview, including stating that he did "not see a great level of strategic intent, analytically, to show a higher level of technical skills, decision-making and problem solving[.]" (ECF No. 19-2 at 15–16; ECF No. 19-5 at 32–33.) In addition, Wojciechowski, the other interview panelist, testified that Plaintiff's answers in his interview were lacking. (ECF No. 19-3 at 133–35.) To overcome summary judgment, Plaintiff must present specific admissible and credible evidence supporting each element essential to the case, and "may not rest on conclusory allegations or bare assertions alone." *See Travelers Indem. Co. v. Stedman*, 910 F. Supp. 203, 206 (E.D. Pa. 1995) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Here, Plaintiff's arguments appear to be little more than conclusory allegations without evidence to support his theories. As such, Plaintiff is unable to meet his burden of demonstrating that Defendant's proffered reasons were pretext under the *McDonnell Douglas* analysis.

In addition to his pretext theory, Plaintiff also purports that Defendant discriminated against him based on his age under a mixed-motive theory. (ECF No. 20 at 9.) In lieu of pursuing

a pretext theory under the *McDonnell Douglas* framework, a plaintiff can establish a mixed-motive theory[4] based on direct evidence of age discrimination. *See Price Waterhouse*, 490 U.S. 228, 247 (1989). Per the framework set out in *Price Waterhouse*, if a plaintiff establishes that the adverse employment action was the result of a mix of permissible and impermissible motives, the burden of persuasion moves to the defendant to prove that the action would have occurred regardless of the impermissible motives. *Id.*

In defining the difference between circumstantial and direct evidence, courts have construed circumstantial evidence to require an *inference* of discrimination based on an employer's comments. *See Torre v. Casio, Inc.*, 42 F.3d 825, 829 (3d Cir. 1994). Plaintiff cites the retirement email sent by May as *direct* evidence of her "age-related activities" to support the application of a mixed-motive theory. (*Id.* at 8.) This email does not meet the "high hurdle" that a plaintiff faces when demonstrating "direct evidence." *Walden v. Georgia-Pacific Corp.,* 126 F.3d 506, 513 (3d Cir. 1997). In her concurrence to *Price Waterhouse*, Justice O'Connor clarified what constitutes direct evidence versus what does not as "stray remarks in the workplace, while perhaps probative of . . . harassment, cannot justify requiring the employer to prove that its hiring or promotion decisions were based on legitimate criteria. Nor can statements by nondecisionmakers, or

---

[4] The alternative route of pursuing a mixed-motive theory under the *Price Waterhouse* framework may not be available to ADEA claims. *See Gross v. FBL Fin. Servs.*, 557 U.S. 167, 179–80 (2009) (holding that the *Price Waterhouse* framework for mixed-motive claims is not applicable to ADEA claims); *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (reaffirming *Gross* and applying a *McDonnell Douglas* analysis to the ADEA claim). Instead, the Supreme Court has held that ADEA claims require "that age was the reason that the employer decided to act, and a plaintiff must therefore prove that age was a but-for cause of the employer's adverse decision[.]" *Egan v. Del. River Port Auth.*, 851 F.3d 263, 272 (3d Cir. 2017) (quoting *Gross,* 557 U.S. at 176–77) (internal quotations omitted). Plaintiff does not meet the burden of establishing age as a 'but-for' cause because Plaintiff is unable to dispute Defendant's proffered reasons for the rejection, including his poor performance in the interview and his inability to manage the expectations of his current job position.

statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard . . . .What is required is . . . direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision[.]" *Price Waterhouse*, 490 U.S. at 247. May's email to the entire department regarding future retirement plans does not indicate any "substantial negative reliance on an illegitimate criterion" in the 2021 job application process at issue. *Id.* Thus, given Plaintiff's failure to meet the elements of an age discrimination claim under both the pretext and mixed-motive theories, Defendant's Motion is granted as to the ADEA claim.

    **C.    PHRA Claims**

The PHRA makes it "an unlawful discriminatory practice . . . [f]or any employer because of the race, color, [or] . . . age . . . of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required." 43 Pa. Stat. Ann. § 955(a). In making determinations for claims under the PHRA, courts construe the provisions contained under the PHRA consistent with its federal counterparts. *See Smith v. Comhar, Inc.*, No. 15-4913, 2017 U.S. Dist. LEXIS 33645, at *18 (E.D. Pa. 2017); *Kroptavich v. Pa. Power & Light Co.*, 795 A.2d 1048, 1054 (Pa. Super. Ct. 2002). *See also Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (analyzing the PHRA in conjunction with its federal counterparts). Here, those federal counterparts are Title VII for Plaintiff's race discrimination claims and the ADEA for Plaintiff's age discrimination claims. For the reasons

outlined above, the Court granted Defendant's Motion for Summary Judgment as to Plaintiff's Title VII and ADEA claims. Thus, Defendant's Motion regarding the PHRA claims is also granted.

## IV.   CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment is granted. Plaintiff's claims are dismissed with prejudice. An appropriate order follows.

BY THE COURT:

/s/ Hon. Kelley B. Hodge
_____
**HODGE, KELLEY B., J.**